The Chancellor.
This hill is filed by the complainants, as judgment creditors of McMurtrie, King & Co., for the benefit of themselves and other creditors who shall come in and contribute to the expenses of the suit. The object of the bill is to set aside a conveyance of real property, which was made by Julius King to Francis Durmot, in trust for King’s wife. The complainants have taken out execution, and levied upon this property. It is shown *397 that the judgment debtors are insolvent, and have no property out of which the judgment can be satisfied. The bill alleges that the conveyance is fraudulent, and was made to defeat and defraud creditors; that while it purports to be for the consideration of one thousand dollars, paid by the grantee, no money was in fact paid, and that the deed was executed to McDurmot, and placed upon record without his knowledge or consent, and that when the deed was executed King was insolvent.
McDurmot has answered the bill. He admits that the deed was made to him, and put upon record without any consultation with him and without his knowledge, and that he paid no consideration himself, and has no knowledge of any consideration having been paid by any one. He says he has a mortgage on the same premises, which was executed to him by King and his wife, in 1852, to' secure a debt of four hundred dollars.
King and wife also answered the bill. They deny that at the time the trust deed was executed, the firm of McMurtrie, King & Co. was insolvent. They admit that McDurmot did not know of the conveyance at the time it was executed, and deny that it was made to defeat the complainants or any other creditor of the firm. They state that the reason McDurmot was not consulted was because he resided at Hoboken, a distance from them, but that they knew him to be their friend, and that they were informed they might use any one’s name as trustee. They further say, that at the time of the execution of the deed, the sum of five hundred dollars, in specie, was then paid by Susan Schultz, the sister of Julia K. King, to the said Julius King, and that, on the twentieth day of September following, the ^balance of the consideration money was paid, in specie or bills, to the said Julius King by the said Susan Schultz; that the money so paid was loaned by the said Susan to the said Julia, to be by her lent to her husband, on condition that the said Julius King would convey the property in question in trust for the benefit of his *398 wife; that the deed was accordingly executed on the twenty-third of August, and recorded on the twenty-seventh day of August, 1853.
The defendants make out a very unsatisfactory case by their answer. In August, the firm of McMurtrie, King & Co. are extensively engaged in business, and although the answer alleges that they were not then insolvent, we find them in one little month failing for a large amount, and not pretending that such failure was occasioned by any unexpected or disastrous loss in their business. In less than two months prior to the failure, King conveys away all his real estate in trust to his wife, and under very suspicious circumstances. He selects a trustee, living at some • distance from him, without consultation with him, and puts the deed upon record without the consent of the trustee. There is an inconsistency, too, about the consideration of the conveyance difficult of explanation. The defendants say that the money was loaned to the wife by her sister, on condition that King would make the trust deed. If this is true, who is to repay the sister for the money loaned ? The wife does not owe the debt, for she could not contract it. It is not pretended that the trust property is security for the debt, or was intended to be so by the parties. Julius King, then, is the debtor, and Susan Schultz his creditor. This circuitous way of doing business is not explained. The account given by the answer of the whole transaction is a very unsatisfactory one, and presents a case of great suspicion. With this unfavorable impression of the case, riiade by the defendant’s own statement, we approach the evidence, and it appears to me to be of such a character as to show the deed fraudulent without a doubt.
And first, as to the insolvency of the firm of McMurtrie, King & Co. at the time of the execution of the deed. In referring to the fact of the denial of insolvency by the answer, I ought to have mentioned the reckless manner in which the denial is made. It was a fact about which *399 Mrs. King could certainly know nothing, and as to which no answer was expected from her. And yet Mrs. King denies the insolvency with as much particularity and certainty as if she was perfectly familiar with all the partnership business and the pecuniary liabilities of the firm. But I think the insolvency of King and of the firm is satisfactorily proved. On the 8th of October, 1853, they made an assignment. Their debts amounted to upwards of §23,000, and their assets will not pay fifty cents on the dollar. On the 23d of August previous, the deed was made. They were driven to make the assignment from losses which they had sustained prior to the date of the deed. There can be no doubt of the insolvency of King and of the firm on the 23d of August. It is proved that the firm actually suspended payment in September, and that, in August, King held a conversation with one of the clerks in the store, as to the best mode of the partners securing their individual property from the creditors of the firm.
To prove the bona files of the deed, the defendants offer Sarah Schultz as a witness. As to her evidence, I would remark, in the first place, if it is true, the answer of King and wife is not only evasive but untrue. The answer says, that the one thousand dollars was lent by this witness to her sister, Mrs. King, on condition that King would convey the property in trust for his wife. The witness, by her evidence, does not pretend there was any such condition. She says her sister, Mrs. King, informed her that her husband was about selling the property, and applied for money to enable her to buy it, and that she advanced the money as a consideration, for which King and his wife transferred, by writing, all Mrs. King’s interest in her grandfather’s estate, with the understanding, that if that interest exceeded a thousand dollars, the witness was to make it up, and if it amounted to less, then Mrs. King was to make the amount good. If this story is true, why did the answer conceal it, and why did it not *400 state the fact of the agreement, which the witness alleges was executed to her by King and his wife? But the cross-examination of the witness shows that this story cannot be relied upon. It appears, from her statement, that Mrs. King is one of seven children entitled to the property of her grandfather; that the estate is unsettled in consequence of the death of the executors, and that no interest has been received from it for the last twenty-two or twenty-three years. The witness says she does not know the amount of her grandfather’s estate, because she was never so particular as to inquire; that when she was a child, she heard her mother say there was in money several hundred dollars. It is evident, from the witness’ statement, that this estate, as a security for the thousand dollars, is a mere shadow.
There are many circumstances, to which I think it unnecessary to refer, going to show that this deed was fraudulently made. As to Julius King’s intention and object in making the conveyance, we have the testimony of Theodore McMurtrie, a clerk in his store. He says, “ Mr. King asked me how a man having property could best secure it from being taken from him for debt. I answered, by making over his property to his wife, or that I believed that was the way. He asked me if that was really the case. I told him that, to the best of my belief, it was. He then exclaimed,” “ slapped his knee with his hand, and, laughing, went out of the room.”
I am satisfied, from the evidence, that this deed should not be permitted to stand as against creditors.